**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| GARY SHROUF | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2:22-cv-91 |
| | ) | |
| ADAIR COUNTY MISSOURI; | ) | |
| | ) | |
| ELDON GRISSOM | ) | **JURY TRIAL DEMANDED** |
| In his individual and official capacities, | ) | |
| | ) | |
| NATHAN FRAZIER | ) | |
| In his individual capacity, | ) | |
| | ) | |
| JUAN CHAIREZ | ) | |
| In his individual capacity, | ) | |
| | ) | |
| JOHN AXSOM | ) | |
| In his individual capacity, | ) | |
| | ) | |
| SARA MILLER | ) | |
| In her individual capacity, | ) | |
| | ) | |
| DENNIS SMITH, D.O. | ) | |
| In his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff and, for Plaintiff's First Amended Complaint, states as follows:

1.      This is an action for damages for the wrongful death of Roger Shrouf resulting from a violation of his constitutional rights by on-duty Adair County Sheriff's deputies and jailers Eldon Grissom, Nathan Frazier, Juan Chairez and John Axsom, and Adair County Detention Center Nurse Sara Miller..  In addition, this is an action for damages for the wrongful death of Roger

1

Shrouf resulting from the medical malpractice of Dennis Smith, D.O.  The Defendants violated

Shrouf's well-settled federal civil rights while acting under color of state law.

## JURISDICTION

2.        Plaintiff's action arises under 42 U.S.C. §§1983, 1985 and 1988 and the United

States Constitution.  This Court has jurisdiction under 28 U.S.C. §§1331 and 1343.  Plaintiff

invokes the supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367 to hear and decide

their claims under Missouri law.  This Court also has jurisdiction pursuant to 42 U.S.C. §1988 to

award and allocate attorneys' fees which are specifically requested in the Complaint.

3.        Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (e) because the

events and/or acts and/or omissions giving rise to this Complaint occurred in Adair County which

is in the Eastern District of Missouri and because Defendants were performing their duties and

responsibilities within the Eastern District of Missouri.

## PARTIES

4.        Plaintiff Gary Shrouf is a citizen and resident of the State of Missouri and the

United States of America.  Plaintiff Gary Shrouf is the father of decedent Roger Shrouf and brings

this action on behalf of himself and all others as defined in §537.080 RSMo.

5.        Adair County, Missouri is a county in the State of Missouri organized and existing

pursuant to Missouri law.  At all relevant times Sheriff Eldon Grissom was the Adair County

Sheriff.  At all relevant times, Sheriff Grissom was a final policymaker for Defendants Adair

County, the Adair County Sheriff's Department, and the Adair County Detention Center and had

the ability to control and direct the conduct of the aforementioned deputies and jailers as they

performed their duties in furtherance of Adair County's goals.  Sheriff Grissom was also charged

with the direction and supervision of officers who were within his employ.  Each of the acts alleged

2

herein against Defendants were committed by them individually, or their agents, servants and/or employees, while acting under color of state law with approval and knowledge of their superiors. Plaintiff sues Adair County Sheriff Grissom in his individual and official capacities.

6.      At all times herein, Adair County Sherriff's deputy and Adair County Detention Center jailer Nathan Frazier was a law enforcement officer employed by Adair County as a member of the Adair County Sheriff's department and jail and was acting under color of law. Plaintiff sues Adair County Sherriff's deputy and Adair County Detention Center jailer Nathan Frazier in his individual capacity.

7.      At all times herein, Adair County Sherriff's deputy and Adair County Detention Center jailer Juan Chairez was a law enforcement officer employed by Adair County as a member of the Adair County Sheriff's department and jail and was acting under color of law.  Plaintiff sues Adair County Sherriff's deputy and Adair County Detention Center jailer Juan Chairez in his individual capacity.

8.      At all times herein, Adair County Sherriff's deputy and Adair County Detention Center jailer John Axsom was a law enforcement officer employed by Adair County as a member of the Adair County Sheriff's department and jail and was acting under color of law.  Plaintiff sues Adair County Sherriff's deputy and Adair County Detention Center jailer John Axsom in his individual capacity.

9.      Sara Miller is a licensed nurse working for the Adair County Sheriff's Department and Adair County Detention Center, who was on duty and present at the Adair County Detention Center on the day of Roger's death.  When Roger Shrouf entered the Adair County Detention Center he entered into a healthcare provider – patient relationship with the nurse on duty, Sara Miller.  In the alternative, when Sara Miller walked by Roger and observed him in clear and

3

obvious medical distress while restrained to a chair in the Adair County Detention Center, she had a duty to intervene as the healthcare provider at the site. Defendant Miller assumed the role of a government actor acting on behalf of the Adair County Detention Center when she entered into a healthcare provider-patient relationship with Roger.  Plaintiff sues Defendant Miller in her individual capacity. In the alternative, Plaintiff sues Defendant Miller in her private and individual capacity arising from their healthcare provider-patient relationship.

10.     Dennis Smith, D.O. is a medical doctor working for the North Regional Medical Center.  Dr. Smith entered into a physician patient relationship with Roger Shrouf when he evaluated Roger Shrouf for his fitness to be confined at the Adair County Detention Center. Dr. Smith assumed the role of a government actor acting on behalf of Adair County when he evaluated Roger and found him fit to be confined.  Plaintiff sues Dr. Smith in his individual capacity. In the alternative, Plaintiff sues Dr. Smith in his private and individual capacity arising from their physician-patient relationship.

11.     Each of the acts alleged herein by Defendants were committed by them individually, or their agents, servants and/or employees, while acting under color of state law with approval and knowledge of their superiors.

**FACTS**

12.     Roger Shrouf ("Roger") was, at all relevant times, a single 45-year old man who weighed approximately 160 pounds.

13.     On January 24, 2020 Roger Shrouf was at his mother Wanda Vansickle's house in Kirksville, MO. After Roger began behaving erratically, Ms. Vansickle called the Kirksville Police Department for help with her son.

4

14.     Kirksville Police Officer Justin Fox responded to the call and arrived at the residence at approximately 7:45 am.

15.     Kirksville Police Officer Jonathan Novinger also responded to the call and was present.

16.     Upon Officer Fox's arrival Ms. Vansickle informed him that Roger had been up for three days and that she believed he was using drugs.

17.     Officer Fox observed that Roger did not appear to have control of his body.  He further observed that Roger was not wearing a shirt, was sweating profusely and could not answer when asked what his name and date of birth were.  In his report Officer Fox states that based on his training and experience he recognized Roger's actions as that of someone who had been using drugs.

18.     After being informed that he needed to leave his mother's house, Roger agreed and told Officer Fox that he would walk to a motel in town and stay there.  Officer Fox did not feel comfortable allowing Roger to walk several miles on snow covered highways into town.

19.     Officer Fox took custody of Roger and placed Roger into a 12-Hour Protective Custody Hold pursuant to 67.315 RSMo. Roger did not resist being taken into custody.

20.     67.315 RSMo states "A person who appears to be incapacitated or intoxicated may be taken by a peace officer to the person's residence, to any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve hours."

21.     Roger was not charged with any crime and the protective custody was for his own protection.

5

22.     Officer Fox transported Roger to the Northeast Regional Medical Center for a fit for confinement procedure because he believed Roger was under the influence of drugs.

23.     According to the North East Regional Medical Center records, Officer Fox and Roger arrived at the Northeast Regional Medical Center at approximately 8:33 a.m.

24.     At the Northeast Regional Medical Center Roger continued to behave in a strange manner. However there is no indication that Roger was being aggressive or threatening.

25.     According to Officer Fox's report, Roger asked for something to drink at the Medical Center but no one provided him water to drink.

26.     Dr. Dennis Smith saw Roger and performed a medical evaluation to determine if Roger was fit for confinement.

27.     According to the North East Regional Medical Center records, Dr. Smith cleared Roger for confinement at approximately 8:51 a.m.

28.     After Dr. Smith cleared Roger for confinement, Officer Fox transported him to Adair County Detention Center, arriving at the jail at approximately 9:00 a.m.

29.     At the jail Roger was cooperative and not combative but under the influence of drugs and clearly having a serious medical condition.  The jailers placed Roger in a cell.

30.     In the cell Roger's medical condition continued to deteriorate.  At approximately 10:15 a.m. Roger was laying face down in his cell yelling rolling back and forth on the ground.

31.     Adair County Sherriff's deputy and jailer Juan Chairez went in to check on Roger. Roger was cooperative and did not resist the officers but because of his obvious serious medical condition was unable to respond to Chairez.

32.     Chairez claimed he noticed Roger's legs and knees were bleeding and so decided to place Roger in a restraining chair.  However, the use of the restraint chair at that time was not

necessary or appropriate due to Roger's obvious medical emergency, and had no other legitimate government interest.

33.    According to the Adair County Sheriff's logs, Roger was placed in the restraint chair at 10:20 a.m.

34.    Adair County Sheriff's Special Order Number S.O.23.1.0 applies to the use of restraint chairs and requires the following:

    a.  Any medical and/or medical issues will be immediately attended to.

    b.  The detainee will be physically checked on every fifteen (15) minutes and documentation of the check will be made in the watch log.  This is a health and well-being check of the detainee's breathing, circulation and level of consciousness.

    c.  Detainees will be allowed at least once every hour to free their extremities and stretch to ensure proper circulation.

35.    Roger was allowed to move outside of the restraints (called a "range of motion") on time at 11:40 a.m.  Roger was not allowed a second range of motion.

36.    Roger was not checked on every fifteen (15) minutes as required by the County safety policy.

37.    There is sparse and incomplete documentation of the well-being checks of Roger's breathing, circulation and level of consciousness.

38.    Roger's condition continued to deteriorate as he showed obvious signs of medical distress which went ignored by the jailers and the nurse on duty, Defendant Miller.

39.    As Roger continued to be confined to the restraint chair he was pale and would call out and moan in obvious signs of pain and medical distress.

7

40.     As Roger continued to be confined to the restraint chair and yelled incoherently in obvious pain, his fellow inmates warned the jailers that Roger was in distress and would "seize out", but were consciously ignored by the officers.

41.     At approximately 3:29 p.m., more than 5 hours after being placed in the restraint chair, the jailers noticed that Roger was unresponsive and not breathing.

42.     At that point the jailers removed Roger from the chair, called for an ambulance and began CPR.

43.     The Adair County ambulance arrived at 3:32 p.m. and transferred Roger to Northeast Medical Center, where he was pronounced dead.

44.     The Boone County Medical Examiner found the cause of death to be methamphetamine toxicity.

45.     Roger's medical condition was treatable and Roger more likely than not would not have died but for the unlawful actions of Defendants as set forth above.

## COUNT I

## VIOLATION OF THE FOURTEENTH AMENDMENT TO UNITED STATES CONSTITUTION UNDER 42 U.S.C. §1983

46.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47.     Defendants Frazier, Chairez, and Axsom, acting alone and together and in concert, used excessive and unreasonable force against Roger as aforementioned, and unreasonably seized Roger in violation of Roger's constitutional rights, including the Fourteenth Amendment to the United States Constitution. Defendants' use of force in seizing and restraining Roger in the

restraint chair, when he posed no threat of harm and was suffering from a clear medical emergency, was not objectively reasonable.

48.     Defendants Frazier, Chairez, Axsom and Miller failed to intervene to prevent the acts and use of excessive force and unreasonable seizure of Roger's person by each other, when they had the opportunity to do so, in violation of Roger's constitutional rights, including the Fourteenth Amendment to the United States Constitution.

49.     Reasonable officers in the position of Defendants Frazier, Chairez and Axsom would have known that the use of a restraint chair for more than five hours on a subject who was not resisting, was not a threat to himself or others, and was suffering from an apparent medical emergency was not objectively reasonable and would be in violation of clearly established law, as no restraint or use of force was required.

50.     There was no rational safety, penological or other legitimate government purpose for the use, and continued use, of the chair by the officers in the face of Roger's helplessness and worsening medical condition. Furthermore, the nature and duration of the use of the restraint chair bore no rational relationship to any purported purpose of the officers in initially restraining Roger.

51.     Because Roger had not been convicted, or even charged, with any crime, Defendants Frazier, Chairez and Axsom had no right to punish Roger for his intoxicated state.

52.     The continued use of the restraint chair, when it served no legitimate purpose and in the face of an obvious medical emergency that was clear even to other inmates in the jail, constituted or was tantamount to a punitive condition of confinement in violation of Roger's right to due process under the Fourteenth Amendment to the United States Constitution.

53.     Defendants Frazier, Chairez, Axsom, Miller and Smith showed deliberate indifference and conscious disregard to the health and life of Roger in violation of the Fourteenth Amendment to the United States Constitution.

54.     Roger had a right to have his serious medical needs addressed, but Defendants Frazier, Chairez, Axsom, Miller and Smith, failed to respond and demonstrated deliberate indifference to the risks of Roger's serious medical condition and needs in violation of Roger's constitutional rights, including the Fourteenth Amendment.

55.     Specifically, Defendants Frazier, Chairez, Axsom and Miller were deliberately indifferent to Roger's serious medical condition in one or more of the following respects:

a.      Defendants knew of and disregarded the substantial risk of harm to Roger in failing to exercise crisis management of an intoxicated individual in placing Roger in a restraining chair;

b.      Defendants failed to provide medical treatment and/or intervention to Roger's medical conditions;

c.      Defendants failed to call for medical interventions for Roger when he was clearly in a medical crisis;

d.      Defendants failed to investigate Roger's medical conditions when Roger's condition was so obvious that even a lay person would easily recognize the necessity for medical attention;

e.      Defendants failed to follow their own policies and procedures in checking on Roger after restraining him, despite their knowledge of Roger's obvious medical condition;

f.      Defendants delayed and/or interfered with Roger's access to treatment and/or therapy for his conditions; and

g.      Defendants failed to take reasonable measures to abate the aforementioned risks and the conditions Roger suffered from.

56.     Defendant Miller was deliberately indifferent to Roger's serious medical condition when she observed Roger's ongoing serious medical condition and crisis yet did nothing to intervene.

57.     Defendant Smith was deliberately indifferent to Roger's serious medical condition when he performed a medical examination on Roger and declared Roger fit for confinement, rather than treating or monitoring Roger's ongoing serious medical condition and crisis.

58.     Defendant Smith negligently violated the standard of care of a reasonable prudent medical physician acting under the same or similar circumstances when he found Roger fit to be confined despite Roger's ongoing serious medical condition and crisis.

59.     As a direct and proximate result of the aforementioned unlawful acts and malicious physical abuse of Roger by Defendants, all committed under color of law and under the Defendants' authority as Adair County Sheriffs Deputies and Adair County Detention Center jailers, Roger experienced severe pain and suffering and died, and was deprived of his right to be free from unreasonable seizures of his person, from the use of excessive force and to have his serious medical needs and conditions addressed, all in violation of the Fourteenth Amendment to the United States Constitution.

60.     As a direct and proximate result of the conduct and acts of the Defendants as aforementioned, Roger and Plaintiff suffered damages. Plaintiff is entitled to recover Roger's medical and burial expenses, Roger's pain and suffering before death, loss of earnings based on the probable duration of Roger's life, loss of consortium, and other damages. Plaintiff has further been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Roger by reason of such death, including past and future

lost income, household services and the value of benefits which would have been provided by Roger.

61.     The acts of Defendants were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Roger, thus entitling Plaintiff to an award of punitive damages against the Defendants.

62.     If Plaintiff prevails, he is entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally, for compensatory damages and/or nominal damages in an amount that is fair and reasonable, for damages for aggravating circumstances, for attorneys' fees and the costs of the litigation and for such other and further relief as is just and proper.

**COUNT II**
**MUNICIPAL AND SUPERVISORY LIABILITY FOR FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. §1983**

63.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64.     There exists within Adair County, including the Adair County Sheriff's Department and Adair County Detention Center policies or customs, practices and usages that are so pervasive that they constitute the policies of the entities that caused the constitutional deprivations of Roger and Plaintiff, as have been more fully set forth herein above.

65.     Defendants Adair County and Sheriff Grissom maintained unconstitutional policies, customs, practices and usages and were deliberately indifferent in:

     a.     That employees of the Adair County Sheriff and the Adair County Detention Center use excessive force, without regard for the need for the use of force, or without regard for the legality of its use;

b.      That employees of the Adair County Sheriff and the Adair County Detention Center conspire with one another to cover for and protect one another from criminal and/or civil sanctions that might arise from the violation of constitutional rights of a citizen through weak oversight of officer use of force;

c.      That employees of the Adair County Sheriff and the Adair County Detention Center can use excessive force when it is not necessary and warranted where the police department fails to take action, investigate or adequately punish officers that violate the constitutional rights of its citizens as more fully described above;

d.      That employees of the Adair County Sheriff and the Adair County Detention Center engage in conduct that is violative of the constitutional rights of its citizens of the United States, with whom they come into contact, including, but not limited to: unjustifiably using excessive force, using a restraining chair when less force or no force would suffice, failing to use proper Crisis Intervention techniques, failing to take an individual's mental health condition, drug intoxication or intellectual disability in consideration when determining the use of force and improper restraint of individuals in violation of the Constitution of the United States;

e.      That the Adair County Sheriff and the Adair County Detention Center willfully and deliberately failed to instruct, control, supervise discipline and train their officers on the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals;

f.      That Adair County Sheriff and the Adair County Detention Center deliberately failed to implement or require the implementation of a policy on the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals;

g.      That Adair County Sheriff and the Adair County Detention Center deliberately failed to train deputies and Ads regarding the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals;

h.      That Adair County Sheriff and the Adair County Detention Center willfully and deliberately failed to enforce or require enforcement on the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals.

13

66.    Defendant Grissom had the duty to effectively supervise, monitor and control the peace officers in their employ.  In addition, Defendant had the duty to effectively train the peace officers in their employ, including supervisors and those who were charged with supervising, monitoring, training, and controlling the deputies of the Adair County Sheriff and Adair County Detention Center.

67.    Upon information and belief, one or more Adair County Sheriff's Department and/or Adair County Detention Center employees have engaged in the same or similar conduct as that experienced by Roger, including being subjected to improper Crisis Intervention care, subjecting others to excessive force, and improper restraint.  Defendant has received complaints regarding these similar incidents prior to the date of the incident involving Roger.

68.    Adair County, including the Adair County Sheriff and/or Adair County Detention Center, has policies, customs, practices or usages that authorized and permitted the actions of Defendants and did nothing to address the complaints.

69.    Defendant Grissom was deliberately indifferent in failing to properly train or supervise their officers regarding the authorized and acceptable use of a chair restraint, when reasonable force can and should be used, Crisis Intervention techniques and properly restraining individuals. A reasonable person in their position would know that this failure to train and supervise would be deliberately indifferent to and/or constitute tacit authorization of the violation of the constitutional rights of individuals like Roger and others who came into contact with the Adair County Sheriff and/or Adair County Detention Center.

70.    In addition, on information and belief, Adair County, including the Adair County Detention Center and/or the Adair County Sheriff, maintained policies or customs, practices and usages in which persons who were not medically fit for confinement were nonetheless improperly

14

declared fit for confinement by physicians such as Dr. Smith, such that individuals who should have received medical care were instead detained in the Adair County Detention Center.

71.    In the alternative, the need for more or different training regarding Crisis Intervention care and the use of restraints was so obvious, and the inadequacy of Defendants' training so likely to result in the violation of constitutional rights, that Defendants were deliberately indifferent even in the absence of similar constitutional violations.  In particular, permitting officers to employ a chair restraint on individuals in a health crisis without proper or sufficient training created a significant and obvious risk of injury and death and the violation of constitutional rights of individuals like Plaintiff's decedent herein.

72.    As a direct and proximate result of the policies, customs, practices and usages of Adair County, including the Adair County Sheriff and/or Adair County Detention Center, and Sheriff Grissom, Roger died, as described herein above, and Plaintiff is entitled to compensatory damages under 42 U.S.C. §1983.

73.    The acts of Defendants Adair County and Adair County Sheriff Grissom were reckless and callously indifferent to the rights of Roger, thus entitling Plaintiff to an award of punitive damages against these Defendants. Furthermore, if Plaintiff prevails, Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally, for compensatory damages and/or nominal damages in an amount that is fair and reasonable, for damages for aggravating circumstances, for attorneys' fees and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT III
## WRONGFUL DEATH

74.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 73 of this Complaint as though fully set forth herein.

75.     Defendants Frazier, Chairez, Axsom, and Miller owed Roger a duty of reasonable care for his safety.

76.     Defendants Frazier, Chairez, Axsom and Miller violated this duty of care in their use of the restraint chair, including leaving Roger unattended in the restraint chair as his condition worsened and clearly required medical intervention.

77.     Defendants Frazier, Chairez, Axsom and Miller violated non-discretionary ministerial duties imposed by the rules and policies of the Adair County Sheriff's Department and Adair County Detention Center, including regarding the use of restraint chairs. Therefore Defendants are not entitled to official immunity.

78.     Defendants Frazier, Chairez, and Axsom owed Roger the duty to determine that there was an imminent danger of serious physical injury or death to Roger or others before using force by restraining Roger in the restraint chair.

79.     Defendants Frazier, Chairez, and Axsom breached this duty of care by placing Roger in the restraining chair without proper supervision when Roger did not pose a danger to himself or others and clearly required medical care and attention.

80.     In the alternative, the acts of Defendants Frazier, Chairez, and Axsom as described herein above, were an assault and battery of Roger, and committed without just cause or provocation, in that the Defendants intended to cause bodily harm or offensive contact with Roger, or the apprehension thereof, the conduct of Defendants indicated such intent, Defendants' conduct

16

did cause apprehension of offensive contact and/or apprehension of bodily harm, and Roger suffered the intended, offensive and harmful bodily contact.

81.     Defendant Miller was deliberately indifferent to Roger's serious medical condition when she observed Roger's ongoing serious medical condition and crisis yet did nothing to intervene.

82.     Defendant Miller negligently violated the standard of care of a reasonable prudent medical nurse acting under the same or similar circumstances when she did not intervene despite Roger's ongoing serious medical condition and crisis.

83.     As a direct and proximate result of the malicious, brutal and outrageous conduct of Defendants Frazier, Chairez, Axsom, and Miller, Roger died and Plaintiff has been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Roger by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Roger.

84.     The acts of Defendants Frazier, Chairez, Axsom, and Miller were wanton, malicious and oppressive and done with a high probability of injury and with reckless indifference to the rights of Roger and Plaintiff, thus entitling Plaintiff to an award of aggravating circumstances.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT IV
## WRONGFUL DEATH – MEDICAL MALPRACTICE

85.    Plaintiff herewith adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 84 of this Complaint, the same as if fully herein set forth.

86.    When Dr. Smith examined Roger to determine his fitness for confinement Dr. Smith and Roger entered into a physician-patient relationship.

87.    Dr. Smith's examination of Roger began at 8:44 a.m. on January 24, 2020.

88.    Dr. Smith declared Roger to be fit for confinement and discharged Roger to be taken to the Adair County Detention Center at 8:51 a.m., 7 minutes after first beginning his examination.

89.    Despite showing clear signs of drug intoxication and escalating medical distress, Dr. Smith did not admit Roger to the hospital for monitoring.

90.    Defendant Smith was negligent in that he failed to render medical care and treatment to Roger commensurate with the standard of care expected of an ordinarily careful and prudent physician under the same or similar circumstances in that he did not render any medical care to Roger and instead declared him fit to be confined at the Adair County Detention Center.

91.    As a direct and proximate result of Defendant Smith's negligence as set forth above, Roger died at the Adair County Detention Center.

92.    As a direct and proximate result of the conduct and acts of the Defendant as aforementioned, Plaintiff has been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Roger by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Roger.

18

93.   The acts of Defendant Smith were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Roger, thus entitling Plaintiff to an award of punitive damages against the Defendants.

94.   The damage caps for non-economic losses contained in §538.210 RSMo. 2006 are unconstitutional for the following reasons:

   a.   The caps deprive the Plaintiff of their right to trial by jury in violation of Article I, Section 22(a) of the Missouri Constitution;

   b.   The caps violate state and federal Constitutional equal protection provisions. *See* Mo. Const. art I, §2; US Const. amend. XIV;

   c.   The caps violate Article III, Section 40 of the Missouri Constitution which forbids special laws;

   d.   The caps violate the separation of powers mandated by Article II, Section I of the Missouri Constitution;

   e.   The caps violate procedural due process and the "open courts" provision of the Missouri Constitution, which states: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Mo. Const. art. I, §14; and

   f.   Any statutory limit on non-economic damages to Plaintiff's negligence claim against healthcare providers wrongfully encroaches on the judicial prerogative of remittitur on a case-by-case basis.

95.   In addition, the protection afforded to healthcare providers by §538.300 RSMo, which specifically excludes healthcare providers from paying pre-judgment interest and post-judgment interest is unconstitutional for the following reasons:

   a.   It violates state and federal Constitutional equal protection grounds. *See* Mo. Const. art. I, §2; US Const. amend XIV;

   b.   It violates Article III, Section 40 of the Missouri Constitution, which forbids special laws; and

c.    It violates the separation of powers mandated by Article II, Section 1 of the Missouri Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendant Smith for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

## COUNT V
## WRONGFUL DEATH – MEDICAL MALPRACTICE

96.    Plaintiff herewith adopts and incorporates by reference each and every allegation contained in Paragraphs 1 through 95 of this Complaint, the same as if fully herein set forth.

97.    When Roger Shrouf entered the Adair County Detention Center he entered into a healthcare provider – patient relationship with the nurse on duty, Sara Miller.

98.    In the alternative, when Sara Miller walked by Roger and observed him in clear and obvious medical distress while restrained to a chair in the Adair County Detention Center, she had a duty to intervene as the healthcare provider at the site.

99.    Despite Roger showing clear signs of drug intoxication and escalating medical distress while restrained to his char, Nurse Miller did not monitor Roger's vitals, contact a physician, alert the jail staff, or provide any healthcare to him whatsoever.

100.    Defendant Miller was negligent in that she failed to render medical care and treatment to Roger commensurate with the standard of care expected of an ordinarily careful and prudent nurse under the same or similar circumstances in that she did not render any medical care to Roger and instead allowed him to continue to be confined to his restraining chair at the Adair County Detention Center.

101.    As a direct and proximate result of Defendant Miller's negligence as set forth above, Roger died at the Adair County Detention Center.

20

102.    As a direct and proximate result of the conduct and acts of the Defendant as aforementioned, Plaintiff has been deprived of the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training and support of Roger by reason of such death, further including past and future lost income, household services and the value of benefits which would have been provided by Roger.

103.    The acts of Defendant Miller were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of Roger, thus entitling Plaintiff to an award of punitive damages against the Defendants.

104.    The damage caps for non-economic losses contained in §538.210 RSMo. 2006 are unconstitutional for the following reasons:

    a.  The caps deprive the Plaintiff of their right to trial by jury in violation of Article I, Section 22(a) of the Missouri Constitution;

    b.  The caps violate state and federal Constitutional equal protection provisions. *See* Mo. Const. art I, §2; US Const. amend. XIV;

    c.  The caps violate Article III, Section 40 of the Missouri Constitution which forbids special laws;

    d.  The caps violate the separation of powers mandated by Article II, Section I of the Missouri Constitution;

    e.  The caps violate procedural due process and the "open courts" provision of the Missouri Constitution, which states: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Mo. Const. art. I, §14; and

    f.  Any statutory limit on non-economic damages to Plaintiff's negligence claim against healthcare providers wrongfully encroaches on the judicial prerogative of remittitur on a case-by-case basis.

105.    In addition, the protection afforded to healthcare providers by §538.300 RSMo, which specifically excludes healthcare providers from paying pre-judgment interest and post-judgment interest is unconstitutional for the following reasons:

      d.    It violates state and federal Constitutional equal protection grounds.  *See* Mo. Const. art. I, §2; US Const. amend XIV;

      e.    It violates Article III, Section 40 of the Missouri Constitution, which forbids special laws; and

      f.    It violates the separation of powers mandated by Article II, Section 1 of the Missouri Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendant Miller for compensatory damages in an amount that is fair and reasonable, for damages for aggravating circumstances and the costs of the litigation and for such other and further relief as is just and proper.

**JURY TRIAL DEMANDED AS TO ALL COUNTS**

Respectfully submitted,

DOWD & DOWD, P.C.

By:    */s/ William T. Dowd*
      William T. Dowd      (39648MO)
      Alex R. Lumaghi      (56569MO)
      Kevin D. Lane      (66027MO)
      Rachel R. Dowd
      DOWD & DOWD, P.C.
      211 North Broadway, Suite 4050
      St. Louis, Missouri 63102
      bill@dowdlaw.net
      Telephone:    314-621-2500
      Telecopy:    314-621-2503
      ATTORNEYS FOR PLAINTIFF


      */s/ James C. Ochs*
      James C. Ochs      (34436MO)
      Ochs & Klein Attorneys, P.C.
      149 N. Meramec Avenue, 2nd Floor

St. Louis, MO 63105
jochs@ochsklein.com
Telephone:    314-727-2111
ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been

furnished to all counsel of record via this Court's ECF on February 10, 2023.


*/s/ William T. Dowd*

23