UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY SHROUF, | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. 2:22 CV 91 JMB |
| ADAIR COUNTY MISSOURI, ELDON GRISSOM, NATHAN FRAZIER, JUAN CHAIREZ, JOHN AXSOM, SARA MILLER, and DENNIS SMITH M.D., | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Adair County Missouri, John Axsom, Juan Chairez, Nathan Frazier, Eldon Grissom, and Sara Miller's Motion to Dismiss (Doc. 24). Plaintiff filed a response in opposition (Doc. 26) to which these Defendants replied (Doc. 30). For the reasons set forth below, the Motion is **GRANTED in part**.

**I.      Background**

Plaintiff Gary Shrouf (hereinafter "Plaintiff") filed suit against Defendants on behalf of Roger Shrouf (hereinafter "Roger") who allegedly experienced a medical emergency on January 24, 2020 while confined at the Adair County Detention Center and under the care and custody of the Adair County Sheriff's Department (Doc. 22).

Plaintiff alleges the following in his First Amended Complaint (Doc. 22): Roger was residing with his mother when he started acting erratically in the morning of January 24, 2020. His mother called the Kirskville Police Department for help, informing the officers that he had been awake for three days and likely using drugs. The officers observed Roger having little control over his body, sweating profusely, and unable to answer basic questions; they decided to place

Roger in a 12-hour protective custody hold authorized by Missouri statute.  That morning, officers transported Roger to the Northeast Regional Medical Center to determine whether he was fit for confinement.  Dr. Dennis Smith, a Defendant herein, examined Roger and "cleared Roger for confinement" at 8:51 a.m.  The officers then transported him to the Adair County Detention Center where he was placed in a jail cell.

While at the jail, Roger's medical condition deteriorated.  At 10:15 a.m., he was laying facedown, yelling, and rolling around in his cell.  Defendant Juan Chairez, a sheriff's deputy, checked on Roger and, while he was cooperative and not violent, he was unable to respond to Chairez and was bleeding on his legs and knees.  Chairez placed Roger in a restraining chair at 10:20 a.m.  He was partially released from the chair an hour later, but he was not checked on every 15 minutes as required by regulations and his deteriorating medical condition and signs of distress were ignored by jailers, including Defendants Nathan Frazier, John Axsom, and Chairez, and the nurse on duty, Defendant Sara Miller.  By 3:29 p.m., while still in the restraint chair, Roger was found unresponsive and not breathing.  He was transported to the Northeast Medical Center where he was pronounced dead due to methamphetamine toxicity.  At the time of these events, Defendant Eldon Grissom was allegedly the Adair County Sheriff.

Plaintiff alleges two claims pursuant to 42 U.S.C. § 1983 and three state law claims.  In Count I, he alleges that Defendants Frazier, Chairez, and Axsom used unreasonable and excessive force, that these Defendants and Miller failed to intervene in the use of excessive force, and that they were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution.  In Count II, he alleges municipal and supervisory liability against Defendants Adair County and Grissom in violation of the Fourteenth Amendment.  In Count III he alleges wrongful death, in violation of state law, against Defendants Frazier,

Chairez, Axsom, and Miller.  In Counts IV and V, he alleges state law claims of medical malpractice as to Defendants Smith and Miller, respectively.  In the pending Motion, Defendants (except for Smith who has filed an Answer (Doc. 28)) seek partial dismissal of Counts I, II, III, and V only.

**II.      Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555-56; Fed. R. Civ. P. Rule 8(a)(2).  However, the principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**III.     Discussion**

   **A.     Count I**

   In Count I, Plaintiff alleges that:

   Defendants Frazier, Chairez, and Axsom, acting alone and together and in concert, used excessive and unreasonable force against Roger as aforementioned, and unreasonably seized Roger in violation of Roger's constitutional rights, including the Fourteenth Amendment to the United States Constitution. Defendants' use of force in seizing and restraining Roger in the restraint chair, when he posed no threat of harm and was suffering from a clear medical emergency, was not objectively reasonable. (Doc. 22 ¶ 47).

He further alleges that these Defendants, in addition to Miller, failed to intervene in the use of excessive force (Doc. 22, ¶ 48).   He claims that the use of force was not objectively reasonable, that it was without penological or other legitimate governmental purpose, and that the length of restraint in the chair was unrelated to the justification for using the chair (Doc. 22, ¶¶ 49-50). Plaintiff also asserts that Defendants exhibited deliberate indifference to Roger's medical needs by, in part, failing to adhere to jail policies and procedures.  Defendants argue that they are entitled to qualified immunity on Plaintiff's claim in Count I that Roger was subjected to excessive force, that Defendants failed to intervene in the use of that force, and that Defendants violated institutional policies and procedures.  In particular, Defendants assert that the law was not clearly established that use of a restraint chair under these circumstances constitutes excessive force, that Plaintiff cannot therefore procced on a failure to intervene claim as to use of that force, and that it is not clearly established that unconstitutional conduct can arise from violations of departmental policies.

   "Qualified immunity shields a government official from suit under § 1983 if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (citations omitted). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the

plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Morgan v. Robinson, 920 F.3d 521, 523 (8th Cir. 2019) (quotation marks and citations omitted). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." City of Tahlequah, Oklahoma v. Bond, __ U.S. __, 142 S.Ct. 9, 11, (2021).

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Rivas-Villegas v. Cortesluna, __ U.S. __, 142 S.Ct. 4, 7 (2021) (per curiam) (citation omitted). Although a direct case on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. In other words, "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." City of Tahlequah, Oklahoma, 142 S.Ct. at 11 (considering a Fourth Amendment excessive force claim). Qualified immunity is immunity from suit and "it is effectively lost if a case is erroneously permitted to go to trial" and should be determined "at the earliest possible stage of litigation." Pearson v. Callahan, 555 U.S. 223, 231-232 (2009) (citation and quotation marks omitted)). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate a violation of his constitutional right and that the right was clearly established at the time. Kuessner v. Wooten, 987 F.3d 752, 755 (8th Cir. 2021); Snider v. City of Cape Girardeau, 752 F.3d 1149, 1155 (8th Cir. 2014).

To prevail on a claim of excessive force under the Fourteenth Amendment's Due Process Clause, Plaintiff will ultimately and generally be required to prove "that the force purposely and knowingly used against [Roger] was objectively unreasonable" under the circumstances. Kingsley v. Hendrickson, 576 U.S. 389, 396-397 (2015); Leonard v. St. Charles County Police Department,

59 F.4th 355, 359-360 (8th Cir. 2023). As a general proposition, using unnecessary force on a compliant, secured, and non-violent detainee who poses no threat to officers or other persons may be excessive. See, e.g. Edwards v. Byrd, 750 F.3d 728 (8th Cir. 2014). However, this is not the inquiry before the Court. Ryan v. Armstrong, 850 F.3d 419, 426-427 (8th Cir. 2017) ("It is a longstanding principle that clearly established law should not be defined at a high level of generality." (quotation marks and citation omitted)). The question before the Court is whether it was clearly established that the use of a restraint chair in the circumstances of this case as set forth in the Complaint (or under similar circumstances) was unconstitutional excessive force at the time of the events in 2020. See Reece v. Hale, 58 F.4th 1027 (8th Cir. 2023) (officer entitled to qualified immunity on claims that, among other things, that she was deliberately indifferent for placing detainee who had ingested methamphetamines in a restraint chair for 1 hour); Cartia v. Beeman, 2023 WL 2401516 (E.D. Mo. 2023 Noce, J.) (holding that it is not clearly established that placing a detainee in a restraint chair for 10-15 minutes is cruel and unusual punishment); Jones v. Grant, 2021 WL 2005923 (E.D. Ark. 2021) (stating that "[t]he court is aware of no controlling decisions by the Eighth Circuit Court of Appeals requiring that a detainee be supervised by a physician while kept in a restraint chair or dictating how long a detainee may be kept in a restraint chair"). Neither the Supreme Court nor the Eighth Circuit Court of Appeals have determined whether placement in a restraint chair, standing alone, constitutes excessive force. See Lombardo v. City of St. Louis, 38 F.4th 684, 690 (8th Cir. 2022) (noting that "[t]he Supreme Court has never answered the question of whether a right may be clearly established without a Supreme Court case specifically recognizing it").

Because there is no controlling precedent regarding the use of restraint chairs in these circumstances, Plaintiff must present "a robust consensus of persuasive authority." Kuessner v.

Wooten, 987 F.3d 752, 755 (8th Cir. 2021) (quotation marks and citation omitted)). Plaintiff has presented no such authority. Indeed, much of Plaintiff's citation to case authority fails to "squarely govern the specific facts at issue." McDaniel v. Neal, 44 F.4th 1085, 1091 (8th Cir. 2022) (quotation marks and citation omitted). For example, Plaintiff cites to Jackson v. Stair, 944 F.3d 704 (8th Cir. 2019), which, even if applicable (the case considered the use of taser guns), was decided a month prior to the events in this case and can hardly "clearly establish" the unconstitutionality of the acts in this case or even been known by the officers involved. In addition, Guerra v. Drake, 371 F.3d 404 (8th Cir. 2004), did not directly address the constitutionality of the use of a restraint chair although it did affirm the lower court's finding that the plaintiff was entitled to damages on a "restraint chair claim." Finally, Plaintiff's citation to Griffis v. Medford, 2008 Wl 294 5562 (W.D. Ark. 2008), is unpersuasive because it is an unreported district court case that is not controlling authority. See Kuesner v. Wooten, 987 F.752, 755 (8th Cir. 2021).

The only case cited by Plaintiff that may be persuasive is Young v. Martin, 801 F.3d 172 (3rd Cir. 2015). In that case, the Appellate Court found that the district court erred in granting judgment to jailers who "strapped [an inmate] in a restraint chair, naked, for fourteen hours, in the absence of any imminent threat of bodily harm to himself or others." Id. at 177. However, citation to one out of circuit case fails to render the alleged unconstitutionality of Defendant's conduct clearly established and would not give the Defendants in this case "fair warning" that their conduct violates the Constitution. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). And, unlike in Young, Plaintiff has alleged that Roger had injuries to his legs and knees, presumably from rolling on the ground in his cell. As such, an inference can be drawn from the Complaint that Plaintiff was a risk to himself, unlike in Young.

Accordingly, these Defendants are entitled to qualified immunity on Plaintiff's excessive force claim in Count I. However, Defendants are not entitled to dismissal of that portion of Count I in which Plaintiff alleges that Defendants were deliberately indifferent by failing, in part, to follow departmental policies (Doc. 22, ¶55(e)). The Court does not read this statement as a stand alone claim but rather an example of the manner in which Defendants were allegedly deliberately indifferent.

As to Plaintiff's additional claim that Defendants failed to intervene in unconstitutional conduct, dismissal is also warranted. Plaintiff does not address the contention that he cannot proceed on a failure to intervene claim without an excessive force claim. In order to prevail on such a failure to intervene claim, Plaintiff must show that that Defendant's failed to intervene and prevent the excessive force by another officer. Hollingsworth v. City of St. Ann, 800 F.3d 985, 991 (8th Cir. 2015). Plaintiff's failure to intervene claim must fail as a matter of law because he cannot establish that any officer used excessive force. See Zubrod v. Hoch, 907 F.3d 568, 580 (8th Cir. 2018) (stating that "a failure to intervene claim may not prevail in the absence of a showing of excessive force"). And, the Eighth Circuit has not recognized a failure to intervene claim outside of the excessive force context. Hess v. Ables, 714 F.3d 1048, 1052 (8th Cir. 2013) ("[O]utside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations."). Accordingly, Plaintiff's failure to intervene claim in Count I is dismissed.

**B.     Count II**

Defendants next argue that they are entitled to qualified immunity on Plaintiff's conspiracy claim and Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978), a claim (vis-à-vis excessive force) in Count II, that the claims against Defendant Grissom, in his official capacity, should be dismissed

as redundant of the claims against Adair County, and that Plaintiff is not entitled to punitive damages on this claim. Plaintiff concedes that the claims against Defendant Grissom, in his official capacity, should be dismissed as redundant (Doc. 26, p. 12 n.4).

In Count II, Plaintiff alleges that Adair County had policies and practices that "authorized and permitted the actions of Defendants and did nothing to address the complaints" (Doc. 22, ¶ 68). Plaintiff further alleges that Defendant Grissom failed to properly train and supervise his employees (Doc. 22, ¶69). Paragraph 65 sets forth the various ways in which Adair County is liable under a policy/practice/custom theory including with respect to the alleged excessive force employed by the individual Defendants (Doc. 22, ¶65(a-h)). Defendants argue that "[a] public entity is entitled to dismissal where the rights of which Plaintiff complains were not clearly established at the time of the alleged conduct" (Doc. 25, p. 6). Plaintiff does not directly address this argument; instead, he merely states the uncontroversial proposition that municipalities are not entitled to qualified immunity.

> As set forth in Szabla v. City of Brooklyn Park, MN, 486 F.3d 385 (8th Cir. 2007):
>
> Where the municipality has not directly inflicted an injury, however, rigorous standards of culpability and causation must be applied, and a showing of deliberate indifference is required. The absence of clearly established constitutional rights -- what Justice O'Connor called "clear constitutional guideposts," -- undermines the assertion that a municipality *deliberately* ignored an *obvious* need for additional safeguards to augment its facially constitutional policy. This is not an application of qualified immunity for liability flowing from an unconstitutional policy. Rather, the lack of clarity in the law precludes a finding that the municipality had an unconstitutional policy at all, because its policymakers cannot properly be said to have exhibited a policy of *deliberate* indifference to constitutional rights that were not clearly established.

Id. at 394 (citations omitted; emphasis in original); See also Lombardo v. City of St. Louis, 38 F.4th 684, 692 (8th Cir. 2022). In this matter, Plaintiff does not appear to allege that the municipality directly caused his injuries; therefore he must show that it was deliberately indifferent to his clearly established rights. As set forth above, it is not clearly established that use of a

restraint chair in the circumstances of this case is excessive force. Therefore, Plaintiff may not proceed on a Monell claim premised on the use of that force.

Plaintiff further seeks punitive damages against Adair County and Grissom (Doc. 22, ¶ 73). Defendants argue that Plaintiff is not entitled to punitive damages under § 1983 and that they are entitled to sovereign immunity on the prayer for punitive damages on state law claims. Plaintiff does not address these arguments. Plaintiff is not entitled to punitive damages against the County (or Grissom in his official capacity) on § 1983 claims. City of Newport v. Fact Concerts, Inc., 453 U.S. 257, 271 (1981); Fletcher v. O'Donnell, 867 F.2d 791, 795 (8th Cir. 1989). And, Plaintiff is not entitled to punitive damages on any state law claims against the county or Grissom, in his official capacity. Mo. Rev. Stat. § 537.610.3 ("No award for damages on any claim against a public entity within the scope of sections 537.600 to 537.650, shall include punitive or exemplary damages."). Plaintiff may, however, seek punitive damages against Grissom in his individual capacity. Wade v. Smith, 461 U.S. 30, 56 (1983).

Finally, the Court does not read Count II to include a conspiracy claim against the individual Defendants. As such, it is unnecessary to determine, at this juncture, whether such a claim should be dismissed.

Based on the foregoing, Defendant Grissom, in his official capacity, must be dismissed from Count II, Plaintiff's Monell claim as to excessive force is also dismissed, and Plaintiff's prayer for punitive damages against the County and Grissom, in his official capacity are dismissed.

**C.     Count III**

In this Count, Plaintiff alleges a state law claim of wrongful death, or in the alternative assault and battery, against Defendants Frazier, Chairez, Axsom, and Miller. Plaintiff does not allege any claim in Count III against Defendant Grissom; therefore, Defendants' argument that

Grissom is entitled to sovereign immunity on official capacity claims are moot.  As to Plaintiff's alternative assault and battery claim, the Court finds that Plaintiff has alleged enough to place Defendants on notice of the claim against him and need not plead additional facts to support this claim.  To the extent that Defendants argue that the cause of action abates upon death pursuant to state law, such an argument is better suited for summary judgment.

**D.      Count V**

Defendants next assert that there is a statutory cap on non-economic damages for medical malpractice, that prejudgment and post-judgment interest are excluded, and that Plaintiff's claims that these exclusions are unconstitutional are unsupported and without merit.  As such, Defendants assert that the prayer for such damages should be dismissed.  Plaintiff offers no argument in response, indeed Plaintiff acknowledges the merit of Defendants' argument based on current law, and merely repeats the allegations in the Complaint while indicating that his intent is to preserve the issues for appeal.  Defendant's arguments are well taken.

Count V is premised on state law; accordingly, this Court is bound by the decisions of the Missouri Supreme Court as to state law.  Burdess v. Cottrell, Inc., 53 F.4th 442, 447 (8th Cir. 2022).  Missouri statute provides:

> 2. (1) In any action against a health care provider for damages for personal injury arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than four hundred thousand dollars for noneconomic damages irrespective of the number of defendants.
>
> (2) Notwithstanding the provisions of subdivision (1) of this subsection, in any action against a health care provider for damages for a catastrophic personal injury arising out of the rendering or failure to render health care services, no plaintiff shall recover more than seven hundred thousand dollars for noneconomic damages irrespective of the number of defendants.
>
> (3) In any action against a health care provider for damages for death arising out of the rendering of or the failure to render health care services, no plaintiff shall

> recover more than seven hundred thousand dollars for noneconomic damages irrespective of the number of defendants.

See Mo. Rev. Stat. §§ 538.210(2(1-3)) (2020).  The statute places limits on noneconomic damages in wrongful death actions premised on medical malpractice (as is the claim in this case).  While a portion of a prior version of the statute was found unconstitutional, see Watts v. Lester E. Cox Med. Centers, 376 S.W.3d 633, 640 (Mo. 2012) (as to medical malpractice and not wrongful death premised on the same), the current and previous versions, effective August 28, 2017 and August 28, 2020, respectively, have been found constitutional.  See Ordinola v. University Physician Associates, 625 S.W.3d 445, 450-451 (Mo. 2021) ("Because a medical negligence action is a statutorily created cause of action, the General Assembly had the legislative authority to enact non-economic damage caps" that do not violate the state constitution.); Dodson v. Ferrara, 491 S.W. 3d 542 (Mo. 2016) (noting that Watts only applied to common law causes of action in which, in 1820 (when the Missouri Constitution was adopted), the right to jury trial attached; and that the wrongful death statute was not recognized in common law at that time); Labrayere v. Bohr Farms, LLC, 458 S.W.3d 319, 334 (Mo. 2015) ("When a law is based on open-ended characteristics, it is not facially special and is presumed to be constitutional.").

The same conclusion has been reached as to the prohibition of pre- and post-judgment interest in wrongful death actions.  See Mo. Rev. Stat. §§ 538.300 (1988) and 408.040 (2015); See Deiser v. St. Anthony's Medical Center, 498 S.W.3d 419 (Mo 2016) (addressing and rejecting various constitutional challenges to § 538.300).

In addition to alleging that the damages caps violate state law, Plaintiff also alleges that they violate Equal Protection clause of the Fourteenth Amendment to the United States Constitution.  Plaintiff has presented no argument or case authority supporting this claim.  Plaintiff

does not explain the contours of the claim or the factual or legal basis of the claim. As such, it also is dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants Adair County Missouri, John Axsom, Juan Chairez, Nathan Frazier, Eldon Grissom, and Sara Miller's Motion to Dismiss (Doc. 24) is **GRANTED in part**.

**IT IS HEREBY ORDERED** that:

1. Plaintiff's claims in Count I of excessive force and failure to intervene in the use of that force are **DISMISSED with prejudice** on qualified immunity grounds;

2. Plaintiff's claim in Count II against Defendant Grissom, in his official capacity only, his Monell claim related to excessive force, and his prayer for punitive damages against the County and Defendant Grissom (in his official capacity) are **DISMISSED with prejudice**; and,

3. Plaintiff's prayer for punitive damages and pre- and post-judgment interest in Count V, in addition to his claims regarding the constitutionality of related state law, are **DISMISSED with prejudice**.

This matter shall be set for a Rule 16 scheduling conference by separate Order.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of April, 2023